*********** The undersigned have reviewed the prior Opinion and Award based upon therecord of the proceedings before Deputy Commissioner Chapman and the briefsand oral arguments before the Full Commission. The appealing party hasshown good ground to reconsider the evidence and therefore the FullCommission affirms with some modifications the prior Opinion and Award.
 *********** The following exhibits were received into evidence at the DeputyCommissioner's hearing:
 1. Defendants' Exhibits 1 A — C — three volumes of bank records;
 2. Defendants' Exhibit 2 and 3 — Industrial Commission forms, medicalrecords, discovery responses for plaintiff and Ronald Vargas;
 3. Defendants' Exhibit 4 — miscellaneous records from Ronald'sPainting;
 4. Defendants' Exhibits 5 — 17 — videotapes;
 5. Defendants' Exhibit 18 — records from Porter Paints;
 6. Defendants' Exhibit 19 — bank records;
 7. Defendants' Exhibit 20 — statement by Tammy Laney;
 8. Defendants' Exhibit 21 — investigation summary;
 9. Defendants' Exhibit 22 — recorded statement;
 10. Defendants' Exhibit 23 — check from Southpark Painting toplaintiff;
 11. Defendants' Exhibit 24 — Fenix Renovations bank records;
 12. Defendants' Exhibit 25 and 26 — Forms 22 for plaintiff and RonaldVargas.
 *********** Based upon all of the competent evidence in the record, the FullCommission finds as follows:
 FINDINGS OF FACT
1. In April 2002 plaintiff, an undocumented worker from Costa Rica, was employed by Ronald Vargas, his cousin, as a painter. Mr. Vargas operated a paint contracting business and contracted with individuals for painting services using the business name "Ronald's Painting." Mr. Vargas also subcontracted jobs from other painting contractors. The terms of plaintiff's employment with Mr. Vargas and the amount of his wages were not disclosed by the evidence of record.
2. On April 25, 2002, plaintiff was working on a job which Mr. Vargas had subcontracted from South Park Painting. The job involved painting the home of David and Jennifer Reed in Mint Hill. There were two other painters working for Mr. Vargas on the job site that day. While working on the job, plaintiff and Mr. Vargas tried to move an aluminum extension ladder along the side of the house. The wind caught the ladder, pushing it against a high voltage wire. Both plaintiff and Mr. Vargas sustained a severe but not fatal electrical shock.
3. As a result of the accident, plaintiff sustained third degree burns to his right thigh and calf and to all of his toes. The tips of his fingers were also burned. He and Mr. Vargas were transported to the Jaycee Burn Center at UNC Hospital in Chapel Hill. Dr. Michael Peck examined him there and recommended treatment with topical medications initially. However, plaintiff subsequently underwent several surgical procedures in which burned tissue was excised and debrided. Three of his toes were amputated and skin was grafted over his wounds.
4. Dr. Peck kept plaintiff out of work until July 2002, but plaintiff actually returned to work in a part-time capacity by June 2002, as evidenced by a check made payable to him from South Park Painting that month. It appeared from subsequent surveillance that plaintiff worked in a supervisory role for Mr. Vargas and might have even had a partnership role at some point, but neither he nor Mr. Vargas testified, so their business relationship was not clear. Plaintiff did not open a checking account until July 2002. Checks for painting services were sometimes made payable to him, although more often they were made payable to Mr. Vargas or Ronald's Painting. The checks were deposited in plaintiff's account, in Mr. Vargas' personal account, in the business account for Ronald's Painting, or split between two or more of the accounts. Plaintiff also received checks directly from Mr. Vargas for his work.
5. Plaintiff worked on a part-time basis in July and possibly in August 2002, but he was working on a full-time basis no later than September 2002.
6. Although Fenix Renovations had no involvement with the job where plaintiff was injured and although plaintiff was not employed by that company, Armando Ortiz, the owner of Fenix Renovations, filed a Form 19 with his insurance company, Security Insurance Company of Hartford, regarding plaintiff's injury. He stated on the employer's report of injury that plaintiff was employed by Fenix Renovations for two weeks and that Mr. Ortiz was his supervisor as of the date of injury. The form was signed by Mr. Ortiz on May 1, 2002.
7. Defendant-carrier then contracted with Crawford Company to do an investigation. Stephanie Hudson, an adjuster with Crawford Company, took a recorded statement from plaintiff who stated that South Park Painting had hired Fenix Renovations as a subcontractor for the Reed house job and that he and Mr. Vargas were hired by Mr. Ortiz of Fenix Renovations to do the job. Plaintiff also advised Ms. Hudson that he had been paid by Fenix Renovations for two weeks of work. In addition to the statement from plaintiff, Form 22 wage charts for both plaintiff and Mr. Vargas were provided by Mr. Ortiz, showing that they had worked for two weeks for his company.
8. Based upon the information provided by plaintiff, Mr. Vargas and Mr. Ortiz, defendant-carrier filed a Form 63 and began paying workers' compensation benefits without prejudice, based on an average weekly wage of $400.00 yielding a compensation rate of $266.68. In June 2002 plaintiff, through counsel, filed a Form 18 notice of injury which showed Fenix Renovations as his employer on the date of his injury. Having no information to the contrary, defendant-carrier did not deny liability for the claim within the ninety days allowed by statute and therefore admitted liability for the injury and paid temporary total disability compensation to plaintiff.
9. On the back of the checks for temporary total disability sent to plaintiff was the statement:
 "By endorsing this check, I certify that I have not worked for or earned wages from any business or individual during the period covered by this check, or that I have reported any earning to the employer/carrier paying me workers' compensation benefits. I understand that making a false statement by endorsing this benefit check may result in civil or criminal penalties."
10. Since Dr. Peck continued to restrict plaintiff from climbing ladders despite the otherwise full work release and since plaintiff represented that he was still unable to work as a painter, defendant-carrier through its servicing agent continued to pay compensation to him for temporary total disability. However, plaintiff continued working as a painter with Mr. Vargas on a full-time basis at all times after August 2002. Nevertheless, plaintiff continued to receive and sign the workers' compensation checks without reporting to the carrier that he had returned to work.
11. In August 2003 defendant-carrier hired Advantage Surveillance, Inc., to conduct surveillance on plaintiff. Plaintiff's observed activities revealed that he was not only capable of working but that he was employed and helping Mr. Vargas operate a business. Defendant-carrier then submitted a Form 90 Report of Earnings to plaintiff's former counsel which was subsequently completed and signed by plaintiff on October 24, 2003. Plaintiff denied working or earning wages at any time between the date of injury and October 13, 2003. The carrier subsequently filed a Form 24 request to stop payment which was approved by the Industrial Commission on January 12, 2004. In compliance with the law, defendant-carrier continued to pay compensation to plaintiff through January 7, 2004, while waiting for a ruling from the Industrial Commission.
12. Through discovery, defendant-carrier subsequently obtained bank records for Fenix Renovations, for Mr. Vargas individually as well as for his company, Ronald's Painting, and for plaintiff. The bank records showed that Fenix Renovations never paid wages to Mr. Vargas or to plaintiff and that Mr. Vargas was operating his own business at the time of the accident. There was a check from South Park Painting directly to Mr. Vargas in the amount of $2,500.00, which appeared to be payment for the job on which the injury occurred. Further investigation led to questioning of Gus Kerlin of South Park Painting who confirmed that Fenix Renovations had not been hired to do the job in question but that Mr. Vargas had been hired directly. Consequently, at the Deputy Commissioner's hearing, defendant-carrier moved that the Form 63 be set aside.
13. Prior to defendant-carrier's admission of liability for this claim, plaintiff and Mr. Ortiz, the owner of Fenix Renovations, made false representations to the claims adjuster that plaintiff and Mr. Vargas were employed by Fenix Renovations at the time of the accident in question. Plaintiff and Mr. Ortiz knew that the representations were false but made them with the intent that defendant-carrier would pay workers' compensation benefits in these claims. Defendant-carrier did, in fact, rely on the misrepresentations in admitting liability for plaintiff's claim. Consequently, there was error due to fraud and misrepresentation which led to payment of workers' compensation benefits in this case. Plaintiff also filed a Form 18 showing Fenix Renovations as his employer and therefore also misrepresented his employment to defendant-carrier and to the Industrial Commission. This misrepresentation was made within the ninety-day period during which the carrier could have denied the claim. Consequently, the misrepresentation contributed to defendant-carrier's ultimate admission of liability for workers' compensation benefits. The representation was made under circumstances such that plaintiff would have known that it was false. It was clear that the intent of the misrepresentation was so that plaintiff could receive workers' compensation benefits.
14. Plaintiff also knowingly misrepresented his disability after he returned to work in June 2002. However, if plaintiff had disclosed his return to work, this information would not have prevented defendant-carrier from entering into the Form 63.
15. Plaintiff willfully made false statements and misrepresentations of material facts for purposes of obtaining workers' compensation benefits under the Workers' Compensation Act and therefore defendant-carrier is entitled to restitution in the following amounts as shown in the sworn affidavits of attorneys Matthew P. Blake and Todd A. Jones: $23,635.95 indemnity compensation, $68,839.31 medical expenses, $7,301.29 case management expenses, $11,388.76 claims investigation and surveillance, and $32,760.92 attorney's fees, for a total of $143,926.23.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At the time of the injury by accident giving rise to this claim, plaintiff was not employed by Fenix Renovations and was therefore not entitled to workers' compensation benefits from Fenix Renovations' workers' compensation carrier. N.C. Gen. Stat. § 97-2.
2. Defendants' admission of liability pursuant to an uncontested Form 63 which was filed in this case was the result of misrepresentations and fraud by plaintiff, Mr. Vargas and Armando Ortiz, the owner of Fenix Renovations. Consequently, defendant-carrier is entitled to have the Form 63 set aside. N.C. Gen. Stat. §§ 97-17; 97-18; 97-82(b); Johnson v. Insurance Co.,300 N.C. 247, 266 S.E.2d 610 (1980).
3. None of the workers' compensation benefits paid in this case, including the payments for medical treatment, were due. Defendant-carrier has no further liability. N.C. Gen. Stat. § 97-2 et seq.
4. Defendant-carrier is entitled to have plaintiff reimburse defendant-carrier for all medical and indemnity compensation paid for plaintiff's injuries and the entire costs of the proceedings including attorney's fees, in the total amount of $143,926.23. N.C. Gen. Stat. §97-88.2(b)(3).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The Form 63 filed in this case is hereby SET ASIDE due to fraud and misrepresentation. Defendant-carrier shall have no further liability for this claim.
2. Plaintiff shall pay restitution to defendant-carrier in the amount of $143,926.23.
3. This case shall be referred to the Fraud Investigations Section of the Industrial Commission for further action.
4. Plaintiff shall pay the costs.
This 15th day of July 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER